## THE PRUDENCE.

### (District Court, E. D. Virginia. May 16, 1911.)

#### COLLISION (§ 102*)—STEAM VESSELS—NAVIGATING IN HARBOR.

A collision between two tugs in Norfolk Harbor, one coming up the river and the other having just backed out from a coal pier, *held* due to the combined fault of both vessels, one for giving a signal to the other, and then, without waiting for an answer, a contrary signal, intended for a distant vessel, but which misled the other, and also for signaling without first ascertaining what course the other intended to take after leaving the pier; the latter for moving on an uncertain course, and not being properly manned.

[Ed. *Note.*—For other cases, see Collision, Dec. Dig. § 102.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

In Admiralty. Suit by the Merritt & Chapman Derrick & Wrecking Company as owner of the steam tug, Rescue, against the steam tug Prudence for collision. Decree for division of damages.

On the morning of the 12th of January, 1910, about 9:30 o'clock, the tugs Rescue and Prudence were in collision in the harbor of Norfolk, some 300 feet out in the stream, about abreast of the Norfolk county ferry slip. The Rescue was coming up the river, and when nearly opposite the Norfolk and Southern wharf, a distance of some 700 feet below the ferry slip, observed the Portsmouth ferryboat leaving her slip for Portsmouth, and checked her speed to allow the latter to pass; whereupon she rang up, and then saw the Prudence swinging out from the Water Front Coal Company's pier, which was some 100 feet above the Berkley, or eastern, side of the ferry; that the Prudence was navigating so as to pass between the Rescue and the wharf, and that the Rescue thereupon blew to the Prudence a signal of one blast of her whistle, indicating her purpose to pass port to port, and there was ample room for their so doing. Shortly after the Rescue gave the one whistle, her master heard a signal of one blast of the whistle from the Berkley ferryboat, which was at that time leaving her slip on the Berkley side of the river, en route to Norfolk, and soon thereafter heard from the same boat a signal of two whistles, which was promptly answered by two blasts of the Rescue's whistle; that at about this time, the tug Prudence, which had been proceeding as above indicated, was observed bearing to port, as if under her starboard wheel, which course was continued by her, whereupon the master of the Rescue immediately reversed his engine and went full speed astern. The Prudence continued to come ahead under her starboard wheel, and ran into and collided with the Rescue, striking her on the port bow, causing considerable damage. The Prudence admits swinging out from the Water Front Coal Company's pier into the channel, and insists that, as she did, her stern swung to starboard, and she came forward with a view of turning to go up the river, at which time, as she gave the signal to go ahead, the Rescue was observed coming up stream on her starboard hand; that the Prudence continued running slowly, keeping to the port of the Rescue, designing to go under her stern, when the latter vessel gave to the Prudence a signal of two whistles, indicating her intention to pass starboard to starboard; that the Prudence then put her wheel hard over for the purpose of swinging to her port; when the Rescue gave a signal of one whistle; and realizing that if she proceeded to port, a collision would follow, the Prudence put her wheel to port, endeavored to swing to starboard, and reversed her engines, but too late to prevent the vessels coming together.

Hughes & Little, for libelants.
Edward R. Baird, Jr., for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WADDILL, District Judge (after stating the facts as above). This collision occurred largely as the result of misunderstanding of signals between the tugs as to the courses on which they were respectively proceeding; that is, whether on passing or crossing courses. The Rescue first gave the Prudence a signal of one whistle to pass port to port, and without waiting a reply from her, proceeded to receive from, and give to, the Berkley ferryboat on the opposite side of the river signals which tended to and misled the Prudence. The Rescue insists that the vessels were passing head on, and that upon giving the one signal, the Prudence should have kept to port and so passed; whereas the Prudence insists that the vessels were on crossing and not passing courses, and that the Rescue should have kept her course, and gone to starboard.

The collision could not have occurred had the two tugs seasonably observed the rules of navigation governing them at the time, whether they be treated as on passing or crossing courses. It took place in the quiet harbor, in broad daylight, with the channel unobstructed, within the shadow of the wharves, and each tug could and should have kept herself under such control as to have avoided running into the other. The Rescue is clearly guilty of fault. She gave the first signal to the Prudence to pass port to port, and then two whistles to the ferryboat across the river, entirely out of the way, at a time and in such manner as to mislead the Prudence. There was no reason for this conduct on her part. The ferryboat was entirely out of the way; and to have been engaged in giving to or receiving from her signals at all was unnecessary, and to have done so after having initiated passing signals with the Prudence, without receiving a reply from her, was inexcusable. She was also guilty of fault in initiating passing signals to the Prudence, without first ascertaining the proper movements of the Prudence, whose vacillating course was certainly at the time such as to have warned the Rescue against proceeding either in close proximity to her, or in giving to or accepting signals from her until her course had been determined. In answer to a question on cross-examination, the master of the Rescue stated:

"Q. Were not you acting on the rule I have been talking about, that you did not know the course of the Prudence, and therefore was not giving any signals until you knew what she was doing? A. I said she was circling down the river. Q. And in a position in which her course could not be determined, was the reason that you did not give your signal? A. Naturally, I did not know where he was going. It looked to me he was circling down the river; I did not know where he was going."

The navigation of the Prudence was likewise at fault on the occasion in question for her failure to properly direct the course of the vessel after backing out in the stream, and for so conducting the same as to confuse and mislead the Rescue; and, moreover, to unduly obstruct the channel for others having the right to use the same. She was also in fault in not having a competent mariner in charge of her navigation, and a proper lookout, or other person, to aid in the same. At the time of the collision, the master and chief engineer of the Prudence were ashore, and the tug's control was in charge of her mate, who admits that he had no license for Norfolk Harbor. This mate, after

stating that upon backing from his dock with his stern swinging to starboard, under a starboard wheel, he received two whistles from the Rescue, and, without answering the same, put his wheel hardstarboard, and swung to port, to the question of what happened then, answered: "A. Being alone in the pilot house—if I had had a man with me, I would have immediately answered his whistle, or if I had not intended for him to pass that way, I would have blown the danger signal. I commenced going by the way he wanted me to do, that is to port. I got my wheel hardstarboard, or nearly so, and was in the act of reaching for the whistle cord to answer the two whistles, when he blew one whistle." And to a further question, after stating that he starboarded after swinging out with his stern to starboard, he said:

"A. After I got straightened out, while I was fooling around the dock. I did not pay any attention to what was coming up."

The witness further stated that in circling out, his purpose was to come down the river, and circle around and pass under the stern of the Rescue; that he had no one on lookout, and no one in the pilot house but himself; that he was acting as lookout and running the boat, and as a matter of fact that he was wheelsman, lookout, and captain.

It may be remarked in this connection that this witness was the only person examined of the officers and crew of the Prudence; and of the officers and crew of the Rescue, only her master was examined. The omission to examine the other persons on both of these tugs cannot fail to be observed by the court.

The conclusion reached by the court is that the collision resulted from the combined negligence of the two tugs, and that consequently the damages resulting should be divided between them.